**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP., <br><br> Plaintiff, <br><br> v. <br><br> ORACLE CORP., <br><br> Defendant. | Case No. 1:25-CV-01651-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT ORACLE CORP.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Background ................................................................................................................... 1

III. Legal Standards ............................................................................................................. 4

    A. Ineligible Subject Matter .................................................................................... 4

    B. Direct Infringement ............................................................................................ 5

IV. Argument ...................................................................................................................... 6

    A. The Complaint Should Be Dismissed Because The '762 Patent Claims Ineligible Subject Matter ................................................................................... 6

        1. The '762 Patent Is Directed To An Abstract Idea ..................................... 7

        2. The Asserted Claim Adds Nothing Inventive .......................................... 10

        3. The Remaining Claims Are Not Patent Eligible ..................................... 11

    B. VirtaMove's Infringement Claim Should Be Dismissed Because The Complaint Fails To Plausibly Allege That Oracle's Products Practice The Limitations At The Heart Of The Invention ........................................................ 12

V. Conclusion ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) .......................................................................................... 4

*ALD Soc. LLC v. Google LLC*,
  No. WA-22-CV-972-FB, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023) ............................ 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ........................................................................................... 4, 5, 10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 12

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ........................................................................................ 11

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ............................................................................................ 5

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ..................................................................................... 9, 11

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ........................................................................................ 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...................................................................................... 4, 10

*CTD Networks, LLC v. Amazon.com, Inc.*,
  688 F. Supp. 3d 436 (W.D. Tex. 2023) .............................................................................. 5

*Eolas Techs. Inc. v. Amazon.com Inc.*,
  No. 2022-1932, 2024 WL 371959 (Fed. Cir. Feb. 1, 2024),
  *cert. denied*, 145 S. Ct. 149 (2024) ................................................................................... 9

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ............................................................................ 7, 8, 9

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ............................................................................................ 13

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) .......................................................................................... 7

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021)......................................................................................11

*Heidary v. Amazon.com, Inc.*,
    No. 2024-1580, 2024 WL 4489918 (Fed. Cir. Oct. 15, 2024).....................................................5

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)...................................................................................................9

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)............................................................................................7, 10

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...................................................................................................7

*Lexington Luminance LLC v. Bulbrite Indus., Inc.*,
    No. 22-3787, 2023 WL 143911 (D.N.J. Jan. 10, 2023)..............................................................6

*Mobile Acuity Ltd. v. Blippar Ltd.*,
    110 F.4th 1280 (Fed. Cir. 2024) ................................................................................................11

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
    657 F. App'x 991 (Fed. Cir. 2016) ............................................................................................10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...................................................................................................9

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................7

*Vervain, LLC v. Micron Tech., Inc.*,
    No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ...................................5, 6

**Statutes**

35 U.S.C. § 101..............................................................................................................1, 4, 6, 10

35 U.S.C. § 271(a) .........................................................................................................................5

**Other Authorities**

Federal Rules of Civil Procedure, Rule 12(b)(6)............................................................................4

**I.      INTRODUCTION**

Abstract ideas are not eligible for patenting. Yet contrary to settled law, the patent-in-suit (U.S. Patent No. 7,774,762 ("'762 patent")) is directed to the abstract idea of making a software application run on an incompatible computer by filtering the application's requests to that computer and substituting the files it uses. The patent claims this idea without introducing any technological solution or inventive concept and without claiming how to achieve the idea. Thus, the '762 patent is invalid under 35 U.S.C. § 101 and the complaint should be dismissed with prejudice.

The complaint also should be dismissed because it fails to plausibly allege that Oracle practices multiple limitations at the heart of the claimed invention. Asserted claim 17 requires "filtering one or more system service requests made by the first software application" and using "predetermined values . . . instead of values related to an identity of the incompatible computer platform." Rather than identify something in Oracle's products that meets these limitations, or explain how those limitations are present in the accused products, VirtaMove's complaint merely parrots the claim language and asserts in conclusory fashion that the limitations are met. VirtaMove's failure to plausibly allege infringement warrants dismissal.

**II.     BACKGROUND**

VirtaMove filed this action on August 27, 2025. The sole asserted patent, the '762 patent, is titled "System Including Run-Time Software to Enable a Software Application to Execute on an Incompatible Computer Platform."

As the '762 patent explains, "[a]pplications are typically designed to run on a specific computer platform, and will not run on one it is not designed for." Dkt. No. 1-1 ("'762 patent") at 1:43-45. As a result, programmers "have to design specific versions of their software that are compatible with each specific computer platform and operating system it is to be installed on." *Id*.

1

at 1:46-51. U.S. Patent No. 7,519,814 (the "'814 patent")—which is related to, and incorporated by reference into, the '762 patent—describes two prior art solutions that allow deployment of applications on an otherwise incompatible computer platform. One involves deployment of an operating system, including files and a kernel, for each otherwise incompatible application. Ex. A ('814 patent at 1:53-61). The second involves application virtualization, which "provides a degree of separation of an application from the underlying operating system." *Id*. at 2:4-12.

The '762 patent purports to address the same issue in two ways. First, the claimed invention filters the application's system service requests. This simply means that the software of the purported invention filters system calls—requests from an application, often made through application libraries, to the operating system kernel—so that the application receives "predetermined values" that make it appear as if it is running on its original platform.[1] *Id.* at 2:36-40; 6:6-8, 12-13; 7:28, 51-53; 8:62-67; 10:6-11, 13-17. Figure 5 shows how runtime software filters system service requests as compared with prior art (Figure 3):



Fig. 3
Prior Art

Fig. 5

---

[1] Values are the data the kernel returns to the application in response to a system call. '762 patent at 10:9-11.

Second, the claimed invention substitutes a set of files—specifically, files distributed with or specific to the operating system required by the application ("second group of files")—for the default system files normally used by the (otherwise incompatible) operating system. *Id.* at 3:47-57. When the application runs, it accesses this second group of files, *i.e.*, the substituted files (such as libraries or configuration files), in place of the otherwise incompatible system's native files. *Id.* at 8:17-21. This allows the application to behave as if it were running on its original platform, even on an incompatible system. *Id.* at 9:58-64; 11:55-61.

Using these two ideas, the '762 patent purports to enable software applications to run on otherwise incompatible platforms in their normal and expected manner. *See id.* at 1:51-64. The sole asserted claim—claim 17—includes these two purported innovations.

| **Claim Language** | |
|---|---|
| 17. In a system having a first software application, which is designed for execution on a first computer platform, a method of executing said first software application on an incompatible computer platform in which the first software application is not intended to execute, said first software application including an object executable by a local operating system of the incompatible computer platform for performing a task related to a service, the incompatible computer platform including a processor, an operating system including a local kernel residing on the incompatible computer platform, and a set of associated local system files compatible with the local kernel and the processor of the incompatible computer platform, the method comprising: | The preamble describes the conventional system architecture ("Prior Art") of Figure 3 as the environment for the claimed invention. *See* '762 patent, Fig. 3. |
| a) providing a computer readable set of first files, comprising a first group of files that include the first software application, designed to execute on the first computer platform and a second group of files that are distributed with or are specific to an operating system required to execute the first software application; | This limitation recites the two sets of files which are used in the following limitations. |
| b) in the execution of the first software application on the incompatible computer platform *using said second group of files in place of the associated local system files* normally used to perform a same task, which are resident | This limitation recites the second alleged innovation, which is executing the application *using* |

3

| | |
|---|---|
| on the incompatible computer platform as part of the operating system, and | *files substituted for* operating system files. |
| c) executing on the second incompatible computer platform runtime software for managing a dynamic state and file location of the first software application, the runtime software including a kernel module resident in kernel mode and at least one application filter library resident in user mode and *filtering one or more system service requests made by the first software application* and providing values from the at least one application filter library which is provided in addition to the local operating system libraries to modify values that otherwise would have been returned by the local operating system in the absence of said filtering one or more system service requests from the first software application, and executing the first software application by accessing files from first set of files in place of operating system files and *wherein predetermined values are provided instead of values related to an identity of the incompatible computer platform*. | This limitation recites the first alleged innovation, which is *filtering system service requests* so the application can work on an otherwise incompatible computer platform. |

## III. LEGAL STANDARDS

### A. Ineligible Subject Matter

The Federal Circuit has consistently held that "[s]ubject matter eligibility under § 101 may be determined at the Rule 12(b)(6) stage of a case" when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

*Alice* sets forth a two-step test for patent eligibility under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, the Court must determine whether the claims are directed to one of the three patent ineligible concepts under § 101: laws of nature, natural phenomena, or abstract ideas. *Id.* at 217. If so, the Court must then "consider the elements of each claim both individually and as an ordered combination to determine whether additional elements

transform the nature of the claim into a patent-eligible application," which the Supreme Court has described as a "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up).

### B.   Direct Infringement

A direct infringement claim is subject to dismissal unless the complaint "plead[s] facts that show the defendant 'makes, uses, offers to sell, or sells' a *complete* patented invention." *CTD Networks, LLC v. Amazon.com, Inc.*, 688 F. Supp. 3d 436, 444 (W.D. Tex. 2023) (quoting 35 U.S.C. § 271(a)) (emphasis in original).  "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021); *Heidary v. Amazon.com, Inc.*, No. 2024-1580, 2024 WL 4489918, at *4 (Fed. Cir. Oct. 15, 2024) (dismissing complaint that failed to suggest how accused products met multiple claim limitations); *ALD Soc. LLC v. Google LLC*, No. WA-22-CV-972-FB, 2023 WL 3184631, at *4 (W.D. Tex. Mar. 17, 2023) (dismissing complaint for failing to allege how accused products meet claim limitations).

This is particularly true for those claim limitations that go to the heart of the invention or point of novelty.  *Bot M8*, 4 F.4th at 1353 ("The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device"); *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) ("a higher level of detail in pleading infringement may—depending on the complexity of the technology—be demanded for elements clearly 'material' to novelty and

5

non-obviousness"); *Lexington Luminance LLC v. Bulbrite Indus., Inc.*, No. 22-3787, 2023 WL 143911, at *5 (D.N.J. Jan. 10, 2023) (agreeing with the *Vervain* court that a "higher level of detail in pleading infringement" may be demanded for "elements clearly 'material' to novelty and non-obviousness").

## IV. ARGUMENT

Oracle moves to dismiss VirtaMove's complaint on two independent grounds.[2] First, the sole asserted claim of the '762 patent is invalid under 35 U.S.C. § 101. The claim is directed to the abstract idea of making a software application run on an incompatible computer by filtering the application's requests to that computer and substituting the files it uses. This idea is implemented on conventional computer components, without any inventive concept. Second, the complaint fails to plausibly allege direct infringement. For the limitations at the point of novelty, VirtaMove merely regurgitates the claim language. Nowhere in the complaint does VirtaMove include any factual allegations suggesting that Oracle practices those core limitations.

### A. The Complaint Should Be Dismissed Because The '762 Patent Claims Ineligible Subject Matter

Claim 17 of the '762 patent is invalid under 35 U.S.C. § 101 because it claims an abstract idea.

---

[2] The complaint does not comply with the Court's Standing Order Governing Proceedings (OGP) – Patent Cases, which requires plaintiffs to plead specific facts supporting pre-suit knowledge for indirect infringement claims. Instead, the Complaint alleges only that Oracle had knowledge of the '762 patent "at least as early as when this Complaint was filed and/or earlier," without providing any factual basis for pre-suit knowledge. Compl. ¶¶ 17-18. Such conclusory and unsupported allegations are insufficient under the OGP and warrant dismissal of the indirect infringement claims. After Oracle raised this issue with VirtaMove, the parties filed a Notice of Dismissal without prejudice of VirtaMove's indirect infringement claims. Dkt. No. 26.

### 1.     The '762 Patent Is Directed To An Abstract Idea

The '762 patent is directed to the abstract idea of making a software application run on an incompatible computer by filtering the application's requests to that computer and substituting the files it uses.

Claims directed to filtering elements of a computing system are abstract. *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x 996, 997-99 (Fed. Cir. 2018) (holding that claims directed to "the filtering of electronic files and data" were patent-ineligible abstract ideas implemented with generic computer functions and lacking any improvement to computer functionality); *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("We have previously held other patent claims ineligible for reciting similar abstract concepts that merely collect, classify, or ***otherwise filter data***."); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1311-15 (Fed. Cir. 2016) (holding that "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, ***filtering*** files/e-mail—is an abstract idea").[3]

Similarly, claims centered on substituting one form of data or information for another within a generic computing system are abstract. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1349 (Fed. Cir. 2021) (claims directed to "a method for enabling a transaction between a user and a merchant, where the merchant is given ***a time-varying code instead of the user's secure (credit card) information***" were abstract); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1353, 1356-57 (Fed. Cir. 2023) ("***encoding and decoding image data and ... converting formats***, including when data is received from one medium and sent along through another, are by themselves abstract ideas." (citation omitted)).

---

[3] Emphasis is added unless otherwise indicated.

The Federal Circuit's decision in *Glasswall* is on point here. There, the court considered claims that recited filtering electronic files and substituting allowable content to regenerate a new file. The court held these steps to be abstract ideas implemented with generic computer functions. *Glasswall*, 754 F. App'x at 997-98. The claims were framed in functional terms and relied on "predetermined rules" to distinguish allowable from nonconforming data, but did not specify how these rules were implemented or how the filtering and substitution were technically achieved. *Id.* at 998. The patents merely required the "conventional manipulation of information by a computer," without improving computer functionality or enabling new capabilities. *Id.*

Just so here. The '762 patent claims the idea of filtering system service requests and substituting operating system-specific files to allow an application to run on an incompatible platform. These steps are claimed in broad, functional language and rely on conventional computer operations—intercepting system calls and redirecting file access—without claiming a technical solution or improvement to computer technology itself. That is, like the patent at issue in *Glasswall*, the claims of the '762 patent nowhere recite *how* the desired functions—such as filtering system service requests or substituting files—are technologically implemented. For example, the claim fails to recite how to "provid[e] a computer readable set of first files," how to "execute" that "computer readable set of first files," or how to determine which "second group of files" are "required to execute the first software application." On highly similar facts, the *Glasswall* court found such functional claims to be ineligible. *See Glasswall*, 754 F. App'x at 998 ("The claims at issue in both patents do not purport to claim *how* the invention receives an electronic file, *how* it determines the file type, *how* it determines allowable content, *how* it extracts all the allowable data, *how* it creates a substitute file, *how* it parses the content according to

8

predetermined rules into allowable and nonconforming data, or *how* it determines authorization to receive the nonconforming data.") (emphasis in original).

*Glasswall* is no outlier. The Federal Circuit has consistently held that claims, like claim 17 of the '762 patent, which recite functional results without specifying how those results are achieved, are abstract and ineligible for patent protection. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("[t]he claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way."); *Eolas Techs. Inc. v. Amazon.com Inc.*, No. 2022-1932, 2024 WL 371959, at *4, *6 (Fed. Cir. Feb. 1, 2024) (holding that claims reciting "interacting with content on the World Wide Web" were abstract because they "merely describe a desired function or outcome without providing details of the claimed distributed processing"), *cert. denied*, 145 S. Ct. 149 (2024).

VirtaMove may argue that the '762 patent does not claim an abstract idea because executing an application on an otherwise incompatible computer platform is rooted in computer technology. *See* Compl. ¶ 14. However, as described above, filtering or substituting out incompatible information or data is a longstanding practice. Moreover, limiting the abstract ideas of filtering and substituting to computer technology does not render the claim patent eligible. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way"); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment").

VirtaMove also may argue that the claimed invention is not abstract because it provides a technological solution to a computer-specific problem, pointing to specification language about

9

"linkages to libraries and applications" and a "secure capsule run time environment." *See* Compl. ¶ 14. However, this argument fails because claim 17 does not recite these features or detail how the purported solution is implemented. The § 101 inquiry must focus on the actual claim language, and "the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint*, 920 F.3d at 769.

### 2. The Asserted Claim Adds Nothing Inventive

At *Alice* step two, the inquiry is whether the claims add an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). Claim 17 does not do so. Claim 17 provides no concrete application or technical detail for the recited steps; it does not specify how the claimed apparatus filters system service requests or substitutes files; and it does not describe how any of the functional steps are to be performed. Instead, each element merely states that the function is to be carried out, without reciting any specific implementation. Courts have repeatedly held that such claims—reciting only generic functional language and conventional components—do not supply an inventive concept. *See Intell. Ventures I*, 850 F.3d at 1328-29 (holding that claims directed to the abstract idea of "creating an index and using that index to search for and retrieve data" lacked an inventive concept because they merely recited generic computer components and conventional data processing activities, such as using XML tags and metadata); *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (rejecting claims that "recite the what of the invention, but none of the how that is necessary to turn the abstract idea into a patent-eligible application").

Here, the claim recites only generic computer system components—such as system services, an operating system kernel, and application libraries—that the specification acknowledges are conventional. *See* '762 patent at 7:28, 51-53, Fig. 3 (identifying System

10

Services 31, Kernel 38, and Application Libraries 36 as Prior Art). Courts have repeatedly held that merely implementing an abstract idea using standard computing elements or automating a known process in a technological environment is not sufficient to supply an inventive concept. *See Alice*, 573 U.S. at 225-26; *BSG Tech LLC*, 899 F.3d at 1290-91.

By failing to claim a specific method to filter system service requests or to substitute application-specific files for operating system files, the claim elements do not, individually or as an ordered combination, transform the claim into a patent-eligible application. VirtaMove offers no plausible allegations to the contrary. Accordingly, claim 17 is ineligible for patenting.

### 3. The Remaining Claims Are Not Patent Eligible

The complaint alleges that the "Accused Products satisfy all claim limitations of claims of the '762 patent," but it maps only claim 17 against an Oracle product. *See* Compl. ¶ 19; Dkt. No. 1-2. In doing so, VirtaMove is treating claim 17 as representative of the other claims. Oracle accordingly treats claim 17 as representative for purposes of this Motion. *See Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 577 (W.D. Tex. 2021) ("A district court may analyze representative claims for patent eligibility where all of the asserted and challenged claims are substantially similar and linked to the same purported abstract idea.") (citation omitted); *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (explaining that a district court "may treat a claim as representative" when "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim") (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).[4] Because the '762 patent's claims are all directed to the same abstract idea and none of the claims includes additional

---

[4] Should VirtaMove attempt to introduce claims not specifically asserted in the complaint in opposition to this motion, Oracle reserves the right to address those arguments in its reply.

11

elements that transform that abstract idea into patent-eligible subject matter, all claims of the '762 patent are unpatentable for the same reason as representative claim 17.

### B. VirtaMove's Infringement Claim Should Be Dismissed Because The Complaint Fails To Plausibly Allege That Oracle's Products Practice The Limitations At The Heart Of The Invention

The '762 patent claims the idea of using filtered system services with existing computer systems. These services modify the data returned by incompatible application libraries and mask the identity of the incompatible computer platform, enabling an otherwise incompatible software application to run on that platform. '762 patent at 9:25-27, 10:9-11, 10:27-28. Specifically, claim limitation 17(c) recites in pertinent part (i) "the runtime software … filtering one or more system service requests made by the first software application," and (ii) "predetermined values are provided instead of values related to an identity of the incompatible computer platform." As discussed above, this filtering and this providing of predetermined values instead of those related to the incompatible operating system lie at the heart of the claimed invention.

Although these limitations are the "point of novelty," the complaint fails to plausibly allege that the Accused Products practice them. First, the complaint offers the conclusory allegation that Oracle's products practice the method and then parrots the claim language. Dkt. No. 1-2 at 35. This cannot meet the plausibility requirement as a matter of law. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "plausible" claim requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Second, after parroting the claim language, VirtaMove's complaint includes a number of snippets and URLs from Oracle, Kubernetes, Docker documents and technical resources. None of these provides a plausible basis for alleging that Oracle practices the limitations. In fact, none of the cited documents so much as mentions "filtering" or "predetermined values." VirtaMove's

excerpts fall into three categories. The first five excerpts are about "containerd" and container management functionality. Dkt. No. 1-2 at 35-37. Nothing VirtaMove cites regarding "containerd" or containers refers to "filtering" or "predetermined values" at all. The next excerpt purports to describe the Oracle Cloud Infrastructure Registry, but again that description does not mention filtering or providing predetermined values. *Id.* at 37. Finally, the last three excerpts purport to describe how to specify the resources (and define limits on resources) used by a container (*id.* at 38-39), giving as an example limiting the memory it can use. These, too, contain no reference to filtering service requests or the provision of predetermined values. The chart provides no plausible factual allegations that Oracle's accused products practice either the filtering or the providing of predetermined values that are central to the purported invention.

## V.     CONCLUSION

Oracle respectfully requests that the Court dismiss VirtaMove's complaint with prejudice because the '762 patent claims do not contain patent-eligible subject matter.[5] Oracle also requests that the Court dismiss VirtaMove's complaint for failure to plausibly allege infringement.

---

[5] Dismissal with prejudice is warranted because "it is clear that the defects [in VirtaMove's Complaint] are incurable"—the patent claims are demonstrably ineligible for patenting, and no amendment VirtaMove may seek to make can alter this fact. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

| | |
|---|---|
| Dated: November 14, 2025 | Respectfully submitted,<br><br>*/s/ Jared Bobrow*<br>Jared Bobrow (admitted *pro hac vice*)<br>CA Bar No. 133712<br>jbobrow@orrick.com<br>Bas de Blank (admitted *pro hac vice*)<br>CA Bar No. 191487<br>basdeblank@orrick.com<br>Diana Rutowski (admitted *pro hac vice*)<br>CA Bar No. 233878<br>drutowski@orrick.com<br>**Orrick, Herrington & Sutcliffe LLP**<br>1000 Marsh Road<br>Menlo Park, CA  94025<br>Tel: (650) 614-7400<br>Fax: (650) 614-7401<br><br>Josue V. Guerra<br>CA Bar No. 339437 (admitted *pro hac vice*)<br>jguerra@orrick.com<br>**Orrick, Herrington & Sutcliffe LLP**<br>353 N Clark Street<br>Suite 3600<br>Chicago, IL 60654<br>Tel: (312) 924-9800<br>Fax: (312) 924-9899<br><br>Darryl J. Adams<br>dadams@sgbfirm.com<br>**Slayden Grubert Beard**<br>401 Congress Avenue, Suite 1650<br>Austin, Texas 78701<br>Tel:  512-402-3550<br><br>*Attorneys for Defendant Oracle Corp.* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 14, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

>                             */s/Jared Bobrow*
>                             Jared Bobrow